IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Longshore, Jr., | C/A No.: 5:24-5073-RMG-KDW |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Greenwood County Detention Center, Lt. Smith, | |
| Defendants. | |

On September 13, 2024, Plaintiff Christopher Longshore, Jr., a pretrial detainee at the Greenwood County Detention Center ("GCDC"), filed this action in federal court pursuant to 42 U.S.C. § 1983 alleging Defendant(s) violated his constitutional rights afforded by the Fourteenth Amendment and Eighth Amendment.[1] This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 33, filed April 25, 2025. On June 4, 2025, Plaintiff responded to Defendants' Motion for Summary Judgment, ECF No. 37. Defendants filed a Reply on June 11, 2025. ECF No. 40. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

---

[1] In this action, Plaintiff sent the court a summons to serve Defendant Lt. Smith only. However, both Defendant Smith and Defendant GCDC filed an Answer in this case, and both Defendants joined the Motion for Summary Judgment. Accordingly, while the undersigned questions whether GCDC was intended to be a named Defendant, it will consider the arguments set forth in the Motion for Summary Judgment.

I. Factual Background

According to the allegations in Plaintiff's Complaint, ECF No. 1, Plaintiff alleges that during the time he was housed at GCDC, on May 23, 2023 at approximately 5:00 a.m., he was assaulted in his room by six other inmates. ECF No. 1 at 5-6. Plaintiff alleges that Defendant Smith was passing out breakfast trays, and while doing so, failed to secure several doors after leaving those rooms. ECF No. 1 at 7. As a result, Plaintiff alleges other inmates were able to enter his cell and assault him. *Id.* Plaintiff alleges that as a result of the assault, he suffered a pinched nerve and back pain. ECF No. 1 at 6. Plaintiff further alleges that he "kept asking for medical treatment," but "they" never responded to his grievances on time. *Id.* at 10. Plaintiff alleges that he underwent an x-ray and was provided ibuprofen along with some other medication; however, he wants Defendants to compensate him for his pain and suffering and for exposing him to safety concerns. *Id.* Liberally construed, Plaintiff brings two claims, a failure-to-protect claim and a claim that Defendants were deliberately indifferent to his medical needs.

II. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing

. . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto,* 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.  Analysis

A. Defendant Smith

Defendants argue that Plaintiff is unable to demonstrate a violation of his constitutional rights, because he is unable to establish an essential element of both of his claims; that is, that he suffered a sufficiently serious injury. Under 42 U.S.C. § 1983, relief may be sought when a plaintiff alleges the violation of a right secured by the Constitution by a person acting under color of state law. *West v. Askins*, 487 U.S. 42, 48 (1988). The undersigned first considers the claims brought against Defendant Smith.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). Prison officials have a duty to maintain "reasonable measures to guarantee the safety of the inmates." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). Protecting prisoners from violence imposed by another inmate falls under this duty. *Id.*

At the time of the alleged assault, Plaintiff was a pretrial detainee at GCDC. A pretrial detainee cannot be subject to any form of punishment. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). Therefore, a pretrial detainee's claim for failure to protect is brought pursuant to the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition on cruel and unusual punishment. *Id.* Still, case law interpreting the Eighth Amendment is instructive. *See Moss v. Harwood,* 19 F.4th 614, 624 (4th Cir. 2021) (noting that courts traditionally apply Eighth Amendment precedent to Fourteenth Amendment claims); *see also King-Fields v. Leggett*, No. ELH-11-1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014) (explaining that while a pretrial detainee's "failure to protect" claim constitutes a due process violation, the same standard elucidated under the Eighth Amendment by a convicted prisoner applies. *King-Fields v. Leggett*,

4

No. ELH-11-1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014) (citing *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001)).

In a more recent Fourth Circuit decision, *Short v. Hartman*, the Fourth Circuit explained that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) abrogated prior precedent requiring the application of the subjective element of the Eighth Amendment test of a pretrial detainee's deliberate indifference claim under the Fourteenth Amendment. 87 F.4th 593, 611-12 (4th Cir. 2023). *Short* held that a pretrial detainee's claim must be evaluated under an entirely objective standard. *Id.*

Here, Defendants argue that Plaintiff cannot show that he suffered a sufficiently serious injury to support his claim. A medical condition is serious enough to satisfy the objective component of the applicable standard if it has "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Defendants cite to Plaintiff's medical records, specifically his x-ray, to show that the physician made relatively benign findings regarding Plaintiff's low back injury and therefore Plaintiff cannot establish that he had a serious medical injury. Indeed, Defendants argue that "the results of the x-ray directly contradict Plaintiff's assertions that he suffered a sufficiently serious injury."[2] Plaintiff's medical records are attached to the declaration of Kathy Tucker, which was provided in support of

---

[2] To further support this argument, Defendants cite to a Maryland district court case, *Velasquez v. Tessema*, No. PWG-16-1807, 2019 WL 3017106 (D. Md. July 10, 2019). However, the court in that case considered whether a physician violated a plaintiff's rights by allegedly delaying medical treatment. The court pointed to the x-ray finding of "no acute osseous abnormality" to support its determination that the seriousness of the injury was *not apparent*, not necessarily that plaintiff was unable to establish that his back pain was not a serious medical condition. Indeed, though not explicitly stated, the court in *Velasquez* appears to have focused its analysis on the subjective component of the deliberate indifference standard.

Defendants' Motion for Summary Judgment. *See* Exhibit A attached to the Declaration of Kathy Tucker, ECF No. 33-3. Plaintiff does not directly address the x-ray findings in his Response.

Throughout these records, medical providers note Plaintiff's complaints of back pain, which he attributed to the inmate assault. *See* ECF No. 33-3 at 5; 9; 10; 11; 13, 14, 16, 17, 19. Defendants point to Plaintiff's x-ray, taken May 30, 2023, wherein the provider noted in the radiology report as follows: "no acute osseous abnormality," "no loss of vertebral body height," "osseous structures appear intact," "intervertebral disc spaces are preserved," and "soft tissues are unremarkable." *See* ECF No. 33-3 at 4. Defendants assert that the x-ray is irrefutable evidence of an injury that does not qualify as "sufficiently serious." However, other records establish Plaintiff complained of back pain, including that he believed he had a pinched nerve.

Upon review of the medical records, the undersigned finds that a genuine dispute of material fact exists as to whether Plaintiff meets the objective prong of the deliberate indifference standard. The medical records reference Plaintiff's complaints of back pain several times and indicated that the prescribed medication was not alleviating his pain. While it is true that the findings detailed in the physician's report after reviewing Plaintiff's back x-ray are relatively benign, the x-ray alone does not foreclose a finding that Plaintiff may still have suffered persistent back pain that could be classified as "sufficiently serious." *See Patterson v. Stirling*, No. 2:22-03183-BHH-MGB, 2023 WL 9231008, at *8 (D.S.C. Oct. 6, 2023) (determining a genuine dispute of material fact existed where the record in that case showed the plaintiff had alleged back pain that persisted for months and warranted referrals to specialists; *see generally Gutierrez v. Peters*, 111 F.3d 1364, 1370–71 (7th Cir. 1997)) (recognizing that the Supreme Court in *Estelle v. Gamble* "never questioned that the inmate's allegations of severe pain from his back injury were sufficiently serious to support his Eighth Amendment claim")).

However, this does not end the inquiry. Defendants also argue that Plaintiff fails to establish that Defendant Smith should have known of a perceived serious risk of harm to Plaintiff, foreclosing any argument that Defendant Smith violated Plaintiff's constitutional rights. The undersigned agrees.

As previously pointed out, Defendants cite to *Short* to explain what the Fourth Circuit has stated a pretrial detainee plaintiff must allege to state a deliberate indifference claim, that is: (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had the condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short*, 87 F.4th at 611. Under this standard, a plaintiff need not show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Instead, it is sufficient to show that the defendant's action or inaction was "objectively unreasonable." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). It is still not enough to allege a defendant negligently or accidentally failed to do right by the detainee. *Id.* at 611-12.

In an even more recent district court decision in this circuit, the court concluded that the proper standard under which to assess a pretrial detainee's failure-to-protect claim is the *Castro* test announced in the Ninth Circuit. *See Disability Rights S.C. v. Richland Cnty.*, No. 8:22-CV-1358-MGL, 2025 WL 2702055, at *4 (D.S.C. Sept. 23, 2025) (citing to *Castro v. County of Los*

7

*Angeles*, 833 F.3d 1060 (9th Cir. 2016)).[3] The *Castro* test considers the following elements as to a pretrial detainee's failure-to-protect claim, that is whether:

> (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Disability Rights S.C.*, 2025 WL 2702055, at *5 (quoting *Castro*, 833 F.3d at 1071). Within his Complaint, Plaintiff alleges that, while passing out breakfast and in the process of feeding the individuals within his unit, Defendant Smith left several doors, presumably to inmate cells open, thereby allowing other inmates to enter Plaintiff's cell and assault him. Plaintiff does not provide any additional information that would point to or otherwise suggest that Defendant Smith was anything more than negligent in failing to secure Plaintiff's cell door. Plaintiff does not allege Defendant Smith intentionally left Plaintiff's door open, or that he knew that an assault may occur in the unit, or that a previous assault had occurred before. Nor does Plaintiff provide any allegations or evidence to support a finding that Defendant Smith was aware that the inmates who Plaintiff alleges attacked him posed a threat to Plaintiff's safety or were planning to cause him harm. Instead, Plaintiff describes one instance where Defendant Smith left one or more doors open while passing out breakfast, and it appears other inmates chose to assault Plaintiff.

Defendant Smith provided his own declaration in support of his recollection of the incident in question. Defendant Smith states that while he was passing out food trays to the inmates in

---

[3] The district court found the explanation in *Castro* persuasive in explaining that *Kingsley* did not squarely address whether the objective standard applies to all kinds of claims by pretrial detainees, including both excessive force claims and [failure-to-protect] claims." *Disability Rights, S.C.*, 2025 WL 2702055, at *4 (citing *Castro*, 833 F.3d at 1069).

Plaintiff's unit, he went to investigate unusual noises he heard coming from the general direction of Plaintiff's cell. *See* Declaration of Frank Smith, attached to Defs.' Motion at ECF No. 33-4. Defendant Smith did not recall it being Plaintiff that was attacked; rather, he recalls it being another inmate in the cell. *Id.* Defendant Smith states he then pulled out his "OC spray," directed that the inmates stop, and placed them back in their respective cells. *Id.* Defendant Smith states that he was not aware of any altercation that might occur or of any circumstances that would have led him to anticipate an altercation would occur. *Id.* Finally, Defendant Smith states that inmates at GCDC have the ability to lock their own cell doors simply by remaining in their cell and closing the door. *Id.* In Plaintiff's Response, he generally contends that Defendant Smith was "opening rooms that can only be opened by the key or the control booth." ECF No. 37 at 1. Plaintiff again contends that Defendant Smith should have secured his room, and he requests video footage to show the incident. ECF No. 37 at 2.

First, aside from the fact that Plaintiff appears to be seeking discovery more than four months after the discovery period ended, Defendants do not dispute that the incident occurred. Thus, video footage showing the incident occurred does not change the analysis before the court. Second, Plaintiff does not directly contradict any of the information provided by Defendants with respect to the fact that Defendant Smith did not intentionally leave a door unlocked or was otherwise aware of any risk of an assault on Plaintiff.[4] At best, Plaintiff again suggests that Defendant Smith was negligent in failing to perform his duties; however, mere negligence will not suffice to establish a constitutional violation. When considering the factors outlined in *Castro*,

---

[4] Interestingly, in Plaintiff's Response, he contends that the rooms were controlled by key (which he contends Defendant Smith failed to use) *or* the control booth. ECF No. 37 at 1. This fact actually cuts against Plaintiff's implication that Defendant Smith was solely responsible for ensuring unit doors were locked.

9

Plaintiff has wholly failed to establish that Defendant Smith made an intentional decision to keep his door unlocked, that Defendant Smith was aware that there was a risk of harm involving other inmates, and that Defendant Smith failed to take measures to abate that risk.[5]

Likewise, Plaintiff has failed to establish that Defendant Smith was deliberately indifferent to his medical needs. A pretrial detainee's claims related to inadequate medical care are governed by the standard of care under the Fourteenth Amendment. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). While not expressly stated by Plaintiff, to the extent he argues that Defendant Smith deprived him of medical care following the assault, any such claim is simply unsupported by the record. It is Plaintiff's contention that the assault occurred on the morning of May 23, 2023.

The undersigned notes that a preliminary issue here is that Plaintiff does not provide any allegations or support to suggest Defendant Smith had anything to do with a denial of medical care following the inmate assault. Indeed, in his Complaint, Plaintiff simply says "they" ignored his grievances. Liability under Section 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Nor does Plaintiff provide any argument in his Response regarding his claim that he was denied medical treatment. The medical records provided to the court show that he received an x-ray approximately one week after the incident allegedly occurred, and that he was consistently assessed by medical providers, as well as provided medication to alleviate his back pain, which he sometimes refused. *See* ECF No. 33-3 at 9, 10, 13. Accordingly, nothing within the record supports

---

[5] The analysis would be no different under *Short*, as Plaintiff's general allegation that Defendant Smith failed to secure his unit door does not establish that Defendant Smith acted intentionally or failed to act to appropriately address any risk. Nor does Plaintiff allege Defendant Smith knew or should have known that this action would pose an unjustifiable high risk of harm. In fact, Defendant Smith stated in his declaration that he immediately responded to the altercation and was able to place the inmates in their cells without incident. Plaintiff does not allege or provide any facts to show Defendant Smith acted unreasonably during this incident.

Plaintiff's allegations that he sought medical treatment, but "they" never responded. Indeed, the medical records support the very opposite. Accordingly, even viewing the evidence in the light most favorable to Plaintiff, the undersigned recommends granting summary judgment in favor of Defendant Smith as to the claims brought by Plaintiff.[6]

B.  Defendant GCDC

While the undersigned questions whether Defendant GCDC was properly named in this lawsuit, because GCDC filed an Answer and joined the Motion for Summary Judgment, and in affording the liberal construction to pro se plaintiffs, the undersigned has considered the arguments related to finding summary judgment in favor of Defendant GCDC. To the extent Plaintiff seeks to bring these same claims against Defendant GCDC, the court agrees with Defendants that such claims fail as a matter of law. Defendants argue that Plaintiff fails to allege any policy or custom on the part of Defendant GCDC which would support a finding of a constitutional violation under *Monell*. However, to the extent Plaintiff has brought a cause of action against Defendant GCDC pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the undersigned finds this claim must fail. In Plaintiff's Response, he now requests "the policy," which he contends will show the rules and procedures officers must follow when feeding detainees. ECF

---

[6] To the extent Plaintiff brings any claims against Defendant Smith in his official capacity, those claims must be dismissed. The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). Relatedly, the Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

No. 37 at 2. First, as previously mentioned, Plaintiff appears to belatedly seek discovery for the first time in responding to a dispositive motion. That issue aside, by the terms of his request, Plaintiff suggests that GCDC actually has a policy or custom in place to protect detainees; it just was not followed in this one instance.

The Supreme Court case of *Monell* held that municipalities can be liable only for their own illegal acts. Pursuant to *Monell*, municipal liability can result "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. The Fourth Circuit case of *Spell v. McDaniel* explains the principles set out in the *Monell* decision and differentiates between a cause of action for deficient training and as compared to deficient policies. 824 F.2d 1380 (1987). In *Spell*, the Fourth Circuit explains that the "policy" at issue in a *Monell* claim can be a municipal ordinance, regulation, or formal or informal policies that authorize constitutional violations. *Id.* at 1385-86. The court described "custom or usage" as "persistent and widespread . . . practices of state officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Id.* at 1386 (citing *Monell*, 436 U.S. at 691). There must be proximate cause or an "affirmative link" between the policy and the constitutional violation. *Id.* The *Spell* court found that "[n]either the existence of such a policy or custom nor the necessary casual connection can be established by proof alone of the single violation charged." *Id.*

In this case, the undersigned finds that Plaintiff cannot meet the requirements for establishing municipal liability on the part of Defendant GCDC. Plaintiff alleges a single instance of conduct on the part of one officer that he alleges resulted in his assault. However, he fails to allege or present any evidence that Defendant GCDC had a policy or knowledge of a *deficient* policy which led to his assault. Therefore, even viewing the evidence in the light most favorable

to Plaintiff, is insufficient to support a finding that Defendant GCDC maintained a custom and usage of a policy or condoned practice that was allegedly unconstitutional.

Moreover, Defendant GCDC is not a "person" subject to suit in a Section 1983 action. It is well settled that only "persons" may act under color of state law; therefore, a defendant in a Section 1983 action must qualify as a "person." Defendant GCDC is a department, a group of buildings, or a facility. Buildings and correctional institutions, as well as sheriff's departments and police departments, usually are not considered legal entities subject to suit. *See Harden v. Green*, 27 Fed. Appx. 173, 178 (4th Cir. 2001) (finding that the medical department of a prison is not a person pursuant to § 1983); *Nelson v. Lexington Cty. Det. Ctr.*, C/A No. 8:10-2988-JMC, 2011 WL 2066551, at *1 (D.S.C. May 26, 2011) (finding that a building, detention center, is not amenable to suit under § 1983 and that Food Service Supervisors was a group of people not subject to suit); *see also Post v. City of Fort Lauderdale*, 750 F. Supp. 1131 (S.D. Fla. 1990) (dismissing city police department as improper defendant in § 1983 action because not a "person" under the statute); *Shelby v. City of Atlanta*, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) (dismissing police department as party defendant because it was merely a vehicle through which city government fulfills policing functions). Because Defendant GCDC is not a "person" amenable to suit under § 1983 any claim against it would have been summarily dismissed.

C. Qualified Immunity

Defendants next argue that even were Plaintiff to adduce evidence that Defendants violated Plaintiff's constitutional rights, Defendants are still entitled to qualified immunity. In *Harlow v. Fitzgerald*, the Supreme Court held that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.

457 U.S. 800 (1982). In evaluating whether qualified immunity applies, the court must determine: (1) whether the facts alleged, taken in the light most favorable to Plaintiff show that Defendants' conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the complained of misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Fourth Circuit has stated that the purpose of qualified immunity is to ensure that government officials can perform their job free from the specter of endless and debilitating lawsuits. *Torchinksy v. Siwinksi*, 942 F.2d 257, 261 (4th Cir. 1991).

The undersigned recommends finding that Defendants are entitled to qualified immunity. As previously analyzed, Plaintiff has failed to show that Defendants' conduct violated a constitutional right. Plaintiff simply argues Defendant Smith failed on one occasion to secure his cell, and as a result other inmates were able to access his cell and assault him. Plaintiff does not allege that Defendant Smith did so intentionally or with any reasonable expectation that other inmates would enter Plaintiff's cell. Plaintiff has not otherwise explained how this conduct violates a clearly established right. Therefore, the undersigned recommends finding that Defendants are entitled to qualified immunity.

IV.   Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 33, be granted as to all Defendants.

IT IS SO RECOMMENDED.

December 10, 2025  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).